FRUGÉ, Judge.
This is a suit for workmen’s compensation initiated by Eton Suire, against the Fidelity and Casualty Company of New York, which is the insurer of Erath Sugar Company, where plaintiff was employed at the time of an alleged injury to his back. From a judgment rejecting plaintiff’s demands and dismissing his suit, he effected this devolu-tive appeal.
The facts which are not in dispute are as follows:
Plaintiff had been employed by Erath Sugar Company as a welder for a number of years before October 29, 1965. On that date, plaintiff walked on a nail and sustained an injury to his foot. This injury was treated by his own physician, Dr. Son-nier, and plaintiff was released a few days later to return to work. After working in the same capacity for another month, plaintiff left his employment as a result of a stomach condition, which illness bears no relation to this case.
Plaintiff’s claim for permanent disability is based upon his assertion that at the time he punctured his foot with the nail, he fell violently on his back causing injury thereto.
Defendant’s position is simply that plaintiff did not receive a disabling injury to his back as a result of the fall on October 29, 1965. The defense is basically that the evidence reveals that plaintiff had been suffering from a prior back injury for many years before this fall, and that, although his back condition has perhaps worsened up to the day of the trial, his inability was not a direct result of the fall he sustained in 1965.
After hearing all the evidence, the district court concluded that plaintiff had failed to prove his case by a preponderance of the evidence.
The medical opinion upon which plaintiff relies in establishing his case are the deposition of two doctors — Drs. Jannetta and Montgomery — both of whom examined plaintiff for trial purposes. Plaintiff’s alleged injury to his back occurred on October 29, 1965. Dr. Montgomery examined him May 16, 1966, and Dr. Jan-netta examined him March 31, 1967.[1]
*557 Dr. Montgomery testified that plaintiff could bend his back only with difficulty, that he walked in a somewhat stooped or bent manner, and that he found some muscle spasms in his back. X-Rays revealed no new injury to any of the vertebrae. Based on the history plaintifff gave him, Dr. Montgomery concluded that plaintiff suffered an aggravation of the old injury or a new injury to the nerve roots in his back in the same area of his prior operation. Dr. Montgomery also said that if plaintiff injured his back on October 29, 1965, he would expect that the pain in his lower back region would have been more severe immediately following the accident than at the time of his examination of plaintiff.
Dr. Jannetta, who examined plaintiff immediately before trial, testified that he walked in a stooped position and with a limp. Plaintiff told Dr. Jannetta that he had been suffering from rather serious and continuous pains in his lower back since his fall on October 29, 1965 and that he was suffering from pain at the time of the examination. Plaintiff also complained of pain in his legs, especially his right leg, thereby leading Dr. Jannetta to conclude that he suffered an injury to nerve roots in his lower back and possibly a herniated disc at the same place where his previous operation took place.
The findings of both these doctors was based upon plaintiff’s statements that before his accident on October 29, 1965, he felt no pain or discomfort and had no difficulty with his lower back and after that date the pain was continuous and became even more disabling as time went by.
Plaintiff took a deposition of two other doctors — Dr. Kirgis and Dr. Sonnier — but chose not to offer them into evidence; thus, these doctors’ depositions were offered into evidence on behalf of defendant. Dr. Kirgis examined plaintiff on two occasions; May 3, 1966 and January 12, 1967. On his first examination, Dr. Kirgis found no limitation of mobility of the lower back and no evidence of muscle spasms. From his X-Rays, Dr. Kirgis found no bone damage to the plaintiff’s back and he found “little evidence that he had residual discomfort from the accident he described”. Dr. Kirgis observed some “instability” of plaintiff’s back, but felt that that instability was “primarily related to the. fact that he had had a disc injury before”.
At the second examination of plaintiff on January 12, 1967, Dr. Kirgis said that plaintiff complained of more discomfort than before which extended down his left leg. Dr. Kirgis attributed this greater discomfort to the likelihood that plaintiff experienced some nerve irritation subsequent to his first examination. Dr. Kirgis was surprised to see that plaintiff’s condition has worsened and concluded after his second examination that plaintiff had become more disabled since the first examination.
The deposition of Dr. Sonnier, a general practitioner, who had treated plaintiff for his foot injury and for back difficulties before his accident in October, 1965, was also introduced into evidence by defendant. The only time Dr. Sonnier saw plaintiff concerning his back subsequent to the accident on October 29, 1965, was July 1, 1966. At that time, Dr. Sonnier examined plaintiff and found him disabled. He stated that he believed the difficulty with plaintiff was a result of another disc rupture or a disc disease. At this time, Dr. Sonnier found some muscle spasms and pain associated with his back.
Dr. Sonnier was asked about plaintiff’s complaints when he went to Dr. Sonnier’s office immediately after sticking the nail in his foot. Dr. Sonnier replied that on the first visit on October 29, plaintiff complained of his foot, mainly, but did mention some pain in his back. Pertaining to this complaint Dr. Sonnier said: “But that was very usual, he had been complaining of the pain in his back before, and so no great note was made of it at that time.” On November 2, and November 6, plaintiff returned to Dr. Sonnier’s office to *558 have his foot checked, and on both occasions plaintiff made no mention of any back pain. Dr. Sonnier knew of plaintiffs earlier back surgery in 1950. Dr. Sonnier also said that on July 2, 1965, plaintiff came to his office and complained about a back injury near his right shoulder blade, for which Dr. Sonnier treated him. A couple of times after that (and before his injury in October, 1965) Dr. Sonnier prescribed medicine for plaintiff because of his complaints of lower back pain. Dr. Sonnier said that he was “surprised” to see plaintiff in July, 1966 and had he realized plaintiff’s back was hurting him as a result of his fall in October, 1965, he would not have discharged him on November 10, 1965, as he did. After- plaintiff’s examination in July, 1966, Dr. Sonnier opined “that his disability would come from his old I.V. Disc disease”, but possibly plaintiff sustained a new injury in the same area as his prior operation.
The only deposition taken on behalf of defendant was that of Dr. Armbrister who examined it in March, 1967. Dr. Arm-brister, an orthopedic surgeon, was given the same history in regard to plaintiff’s back as the other doctors. Dr. Armbrister noticed plaintiff’s bent or stooped posture and the severe limitation of his back movements. Dr. Armbrister, after taking X-Rays, could find no herniated disc nor any substantial indications of nerve irritation. Dr. Armbrister felt that plaintiff’s limited motion in his back was probably a result of his previous operation in 1950. Dr. Armbrister found no evidence of a new injury to plaintiff.
Plaintiff also produced lay witnesses who in substance testified that before his accident in October, 1965, plaintiff had made no complaints of any back difficulties; but sometime subsequent to that, his back began troubling him, and he acquired a bent posture and a different gait.
All in all, from plaintiff’s evidence, there appears little doubt that he was disabled at the time of the trial. The only question is whether or not this disability was a direct result of his fall in October of 1965.
The defendant put on the stand lay witnesses in order to show the lack of causal connection between the accident in October, 1965, and his present disability. From this evidence, it appears that after plaintiff was released from Dr. Sonnier’s care, he returned to work at Erath Sugar Company, occupied his same position as before, and performed the same type of work. Plaintiff never complained to anyone on the job that he was suffering from any pain in his back. He had told one employee, before his injury in October, 1965, that he was unable to lift heavy objects because of a prior operation on his back. Plaintiff left his work in December, 1965, because of a stomach ailment and not because of back difficulties. It appears that at the end of February or the first part of March, 1966, plaintiff sought re-employment on two occasions at the same position with Erath Sugar Company, but was turned down because the company had already replaced him. On those two instances, plaintiff never mentioned any disability, nor was any disability apparent.
After considering all this evidence the trial court concluded that plaintiff failed to prove his case by the legal certainty required by law. As to this conclusion we are unable to say that the trial court was manifestly erroneous.
There appears little doubt that the plaintiff is now unable to perform the type work he had done previously. But considering all the medical and lay evidence, it is our opinion that plaintiff has failed to prove, by preponderance of the evidence, that his accident on October 29,1965, caused a new injury to his lower back or a significant aggravation of a prior back condition which has resulted in his present disability.
For the foregoing reasons, the judgment of the trial court is affirmed at appellant’s costs.
Affirmed.

. This deposition was taken in New Orleans only four days before the actual trial of the case. Defendants received notice of the taking of the deposition on March 30, at 4:00 p. m., less than twenty-four hours before the deposition was actually taken. Defendant did not appear in New Orleans at the taking of the deposition of Dr. Jannetta and objected to the admissibility of that deposition on the grounds that notice of it was not timely served upon him. Therefore, defendant did not have an opportunity to cross examine Dr. Jannetta.